IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

2005 APR -7 PM 1:50

CASE NO.

STEVEN M. BIRCOLL,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, a political subdivision of
The State of Florida, THE MIAMI-DADE COUNTY
POLICE DEPARTMENT, an agency of the public entity
and a part of Miami-Dade County, and THE MIAMI-DADE
COUNTY DEPARTMENT OF CORRECTIONS and REHABILITATION,
an agency of the public entity and a part of Miami-Dade County,

    Defendants.

_____/

05-20954
CIV-MORENO

COMPLAINT

MAGISTRATE JUDGE
SIMONTON

Comes now the Plaintiff, STEVEN M. BIRCOLL, by and through the undersigned attorney and sues the Defendants, MIAMI-DADE COUNTY, a political subdivision of the State of Florida, THE MIAMI-DADE COUNTY POLICE DEPARTMENT, an agency of the public entity under the supervision and control of Miami-Dade County, and THE MIAMI-DADE COUNTY DEPARTMENT OF CORRECTIONS and REHABILITATION, an agency of the public entity under the supervision and control of Miami-Dade County, and alleges as follows:

### Jurisdiction and Venue

1.     This action arises from a violation of Title II of The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. Sec. 12101 et. seq., Section 504 of the

Rehabilitation Act of 1973, as amended, The Civil Rights Act, 42 U.S.C. 1983, as hereinafter more fully appears. This Court has jurisdiction pursuant to 28 U.S.C. Secs. 1331 and 1343.

2.   Venue properly lies in the Southern District of Florida because the acts and omissions which combine to form this action occurred in this judicial district.

## Parties

3.   The Plaintiff, STEVEN M. BIRCOLL, is a citizen of the United States and of the State of Florida, is a qualified individual with a disability within the purview and meaning of Title II of the Americans With Disabilities Act (hereinafter referred to as the ADA), 42 U.S.C. Secs. 12102 and 12131 (2), and The Rehabilitation Act of 1973, and is over the age of 21.

4.   Defendants MIAMI-DADE COUNTY, MIAMI-DADE COUNTY POLICE DEPARTMENT AND MIAMI-DADE COUNTY DEPARTMENT OF CORRECTIONS and REHABILITATION, upon information and belief, are a public entities within the meaning of 42 U.S.C. Sec. 12131 (1), local government and agencies, respectively, within the purview and meaning of Section 504 of The Rehabilitation Act of 1973 and are entities subject to 42 U.S.C. 1983.

## ALLEGATIONS COMMON TO ALL COUNTS

5.   Plaintiff STEVEN M. BIRCOLL (hereinafter referred to as Plaintiff), is profoundly deaf [1], and has been so since birth.

6.   At approximately 2:50 A.M. on April 7, 2001, Plaintiff was driving his automobile in a private parking lot the Royal Oaks Shopping Center in Miami Lakes,

---

[1] Plaintiff recently underwent surgery, which provided him with an assistive hearing device known as a cochlear implant. Said device is gradually enabling Plaintiff to hear and distinguish sounds to a degree greater than that which he previously enjoyed, however at the time the allegations contained herein occurred, Plaintiff had no capacity to hear in one ear and 10% capacity in the other.

2

Florida. At that same time, Miami-Dade County Police Office Charles Trask was traveling westbound on Miami Lakes Boulevard, approximately 400 yards away from, and parallel to the Royal Oaks parking lot.

7. A field of tall grass and numerous trees lay between Officer Trask's view of Plaintiff's automobile. Nevertheless, Officer Trask later claimed to have observed Plaintiff make a, "rolling stop", at a stop-sign within the parking lot, at which point Officer Trask began to observe Plaintiff's car more closely.

8. Plaintiff proceeded to drive southward toward the intersection of the entrance to the mall and Miami Lakes Boulevard. At the intersection there was a traffic light. Due to the late hour the traffic light was blinking yellow, on and off. Plaintiff was attempting to find his was back to the expressway in order to return to his home in Pembroke Pines, and intended upon turning left onto Miami Lakes Drive, however there were bushes situated on the corner of the intersection, which stretched forth toward the street and obstructed Plaintiff's view of Miami Lakes Drive. Being deaf, Plaintiff was unable to hear whether there was any traffic approaching the intersection. Therefore he pulled his car a few feet forward in order to ascertain that it was safe to make a left hand turn.

9. Officer Trask observed Plaintiff's car as it pulled forward into the intersection, then backed up to allow for an oncoming car and then turned left onto Miami Lakes Drive. This action provoked Officer Trask to believe that Plaintiff was driving under the influence of alcohol or drugs.

10. Officer Trask proceeded to make a U-turn and to follow Plaintiff for approximately three quarters of a mile along Miami Lakes Boulevard, at which point

3

Officer Trask turned the lights on the top of his squad car on and proceeded to effect a traffic stop of the Plaintiff's car.

11.  Upon approaching the driver's side window of the Plaintiff's car, Officer Trask shone a large flashlight into the Plaintiff's face and without advising the Plaintiff as to why he had been stopped, Officer Trask immediately asked the Plaintiff what he had been drinking.

12.  The Plaintiff asked Officer Trask to repeat the question, at which point Officer Trask ordered the Plaintiff to get out of the car. The Plaintiff immediately got out of his car and again Officer Trask demanded to know what he had been drinking. The Plaintiff told Officer Trask that he had not been drinking anything, at which point officer Trask demanded that the Plaintiff tell him what drugs he had been taking. The Plaintiff responded that he had not been taking drugs.

13.  So long as the flashlight continued to shine, the Plaintiff was able to discern some of the questions Officer Trask asked him, but since he was attempting to read Officer Trask's lips, the area was very dark and Officer Trask had a very heavy mustache, the Plaintiff found it necessary to ask Officer Trask to repeat the questions he asked several times.

14.  The Plaintiff attempted to explain to Officer Trask that he was deaf and therefore could not hear what was being said to him and that he had a speech impediment which made it difficult for others to understand things he said. Officer Trask accused the Plaintiff of being difficult and began to attempt to communicate with the Plaintiff via a form of sign language that Officer Trask had fashioned in order to communicate with his own son (who is developmentally challenged) and which bore no resemblance to traditional sign language.

4

15. Even had Officer Trask been proficient in traditional sign language, the Plaintiff could not have understood the same because the Plaintiff has never learned nor used sign language to communicate.

16. The more the Plaintiff tried to explain to Officer Trask that he was having difficulty understanding him, the more annoyed Officer Trask became and the more he accused the Plaintiff of being difficult and uncooperative.

17. Officer Trask told the Plaintiff that he wanted the Plaintiff to, "do some tests", and that if the Plaintiff agreed to do said tests Officer Trask would release him and allow him to go home.

18. Officer Trask then proceeded, without advising the Plaintiff that he had the right to refuse the tests and without advising the Plaintiff that a DUI investigation was commencing, to attempt to lead the Plaintiff through a series of traditional roadside sobriety tests. During the course of one such test Officer Trask told the Plaintiff to look him directly in the face, at which point he directed the Plaintiff to put his head back, close his eyes and then follow Officer Trask's directions. The Plaintiff once again attempted to explain to Officer Trask that he was deaf and therefore could not hear to follow any directions if his head were back and his eyes were closed. This served to further frustrate and annoy Officer Trask.

19. Officer Trask proceeded to examine the Plaintiff's eyes closely with the flashlight, although Officer Trask is not certified to perform a Horizontal Gaze Nystagmus test. He then proceeded to make the Plaintiff perform the Romberg Balance Test, in which the Plaintiff was told to close his eyes and estimate when 30 seconds had passed. The Plaintiff's estimate was rendered at 29 seconds.

20. The Plaintiff was then made to perform the, "walk and turn" test. On the Dui Test Report later completed by Officer Trask, Officer Trask indicated that the Plaintiff had started before he was told to do so, three times. The Plaintiff continued to insist that he could not clearly understand Officer Trask's instructions, but Officer Trask persisted with the tests nonetheless, often giving instructions while having his back to the Plaintiff.

21. The Plaintiff repeatedly requested the assistance of an interpreter and asked for an attorney, both of which requests were ignored.

22. Despite the fact that (as indicated on the DUI Test Report) the Plaintiff displayed no unusual reactions, his condition was orderly and he performed the tests as best he could, given the fact that he could not hear the instructions, Officer Trask determined that the Plaintiff was being uncooperative, rather than hearing impaired, declined to call an interpreter of any kind to the scene and announced to the Plaintiff that he had failed the roadside tests and was being placed under arrest for driving under the influence of alcohol.

23. The Plaintiff, having understood only part of that which Officer Trask had said to him, did not understand why he was being arrested. He performed the tests because he had been told that if he did so he would be allowed to go home. Instead, he was handcuffed, placed in the back seat of Officer Trask's squad car and taken to the Miami Lakes Police Sub-Station, a division of the Miami-Dade County Police Department.

24. During the drive to the Miami Lakes Sub-Station, Officer Trask continually spoke to the Plaintiff, although the Plaintiff could only see the back of Officer Trask's head. The Plaintiff knew he was being spoken to because Officer Trask was gesturing to

6

him from the front seat, while driving, and the Plaintiff could make out the occasional muted sound coming from that direction.

25. Upon arrival at the Miami Lakes Sub-Station, the Plaintiff was taken into the holding area and chained to another individual who was clearly drunk, and the two were then chained to a bench.

26. At this point Officer Trask took a seat to begin filling out paperwork, and Officer Townsend approached the Plaintiff. The Plaintiff attempted to explain to officer Townsend that he was deaf and could not understand what was being said to him. Officer Townsend then sat next to the Plaintiff and proceeded to read a document later identified as the Florida Implied Consent Form, pertaining to a breathalyzer test.

27. Inasmuch as Officer Townsend was sitting next to the Plaintiff and not facing him, the Plaintiff could not understand what Officer Townsend was doing. When the Plaintiff offered no response, Officer Townsend proceeded to stand in front of the Plaintiff, while the Plaintiff was seated, chained to the bench, and to once again read the Implied Consent Form to the Plaintiff. The Plaintiff once again expressed the fact that he did not understand what was being read to him because he could not hear it.

28. The Plaintiff became so frustrated that he removed a card from his wallet and handed it to Officer Townsend. The Plaintiff had acquired the card several years in the past, and was under the impression that it stated that he wanted to speak with an attorney and would consent to a breathalyzer test.

29. Officer Townsend was continuously unable to communicate effectively with the Plaintiff, however the Plaintiff repeatedly voiced his wish to be afforded an interpreter and to speak with an attorney. Once again both requests were ignored. Officer Townsend, unable to communicate with the Plaintiff, decided that the Plaintiff

was being difficult and was refusing to take a breathalyzer test. At one point Officer Townsend indicated to Officer Trask that an interpreter should be sought out for the Plaintiff, but Officer Trask was adamant that the Plaintiff was being deliberately uncooperative and did not have a hearing problem.

30. The Plaintiff, meanwhile, sat waiting for the breathalyzer to be brought to him so he could take the test (the Plaintiff had never before been arrested for DUI or anything else, and therefore labored under the impression that the breathalyzer was a portable machine that would be brought to him, that he would take the test and then be released), but had no idea that the document Officer Townsend was reading to him pertained to the breathalyzer test.

31. The Plaintiff repeatedly asked for permission to make a telephone call to his home. Permission for the same was denied. The Plaintiff sat chained to the bench in the Miami Lakes Sub-Station from approximately 3:45 A.M. until approximately 5:30 A.M., at which time he was transferred by Miami-Dade County police officers to Turner Guilford Knight Correctional Facility (hereinafter referred to as TGK).

32. Upon arriving at TGK the Plaintiff was fingerprinted and booked. His picture was taken and his belongings were taken from him. Throughout the course of the booking procedure, the Plaintiff consistently told the corrections officers that he was deaf and asked to be permitted to use a TTY/TTD device (a telephonic device for the deaf) to call his home. He was told that no such device existed a TGK and that if he wanted to call home he would have to use the pay phone on the wall, just like all of the other inmates.

33. Seeing no other alternative, the Plaintiff picked up the receiver of the pay

8

telephone, dialed his home telephone number and began to yell into the receiver that he was in jail, that he needed help and for someone to please come to his aid. Having no means of knowing whether his call had been answered or his message heard, the Plaintiff once again requested the services of an interpreter and an attorney, but again those requests were denied.

34. The Plaintiff was then placed in a solitary confinement cell. As he was being led into the cell he inquired as to why he was being so confined, but was given no answer.

35. The Plaintiff sat in the solitary confinement cell at TGK from approximately 6:45 A.M. until approximately 6:30 P.M. that evening. During that time, he was given no food, no water and no information. He repeatedly knocked on the small window of the cell in an attempt to get the attention of a corrections officer, to ask for food and water and to once again ask for an attorney, but nobody responded to him other than two corrections officers who stood outside his solitary cell and made distorted faces at him through the small window.

36. Late on the afternoon of April 7, 2001, a friend of the Plaintiff's, having heard his cry for help on the Plaintiff's home answering machine, posted his bond and the Plaintiff was released. Subsequently the Miami-Dade County State Attorney's Office entered a *nolle prosequi* with regard to the DUI charge.

## COUNT I
### Violation of the ADA

37. Plaintiff realleges and reaffirms paragraphs 1-36 of this complaint as if fully set out herein.

9

38.	Pursuant to 42 U.S.C. Sec. 12132, a qualified individual with a disability shall not by reason of such disability be denied the programs or activities of a public entity.

39.	In violation of the ADA all Defendants denied the Plaintiff the programs or activities of a public entity by failing to provide him with

   a. a telephonic device for the deaf and
   b. an interpreter to assist him in communicating with both the Miami-Dade County police officers and the Miami-Dade County corrections officers.

WHEREFORE Plaintiff Steven M. Bircoll requests:

   a. A mandatory injunction permanently compelling Miami-Dade County, the Miami-Dade County Police Department and The Miami-Dade County Department of Corrections and Rehabilitation to make available to all deaf individuals within their custody and/or control, telephonic devices specifically manufactured for use by deaf individuals for purposes of communication.

   b. A mandatory injunction compelling Miami-Dade County, the Miami-Dade County Police Department and the Miami-Dade County Department of Corrections and Rehabilitation to provide qualified interpreters to deaf individuals within their custody and/or control, for the purpose of facilitating the ability of deaf individuals to communicate with law enforcement personnel at all stages of criminal investigations, incarceration and procedure.

   c. Trial by jury of all issues so triable;
   d. The costs of this action;
   e. The award of reasonable attorneys fees
   f. Any and all such other relief as he may be deemed to be entitled.

## COUNT II
### Violation of Civil Rights Act

40. Plaintiff realleges and reaffirms paragraphs 1-36 of this complaint as if fully set out herein.

41. Defendant's actions as set forth above establish a cause of action based upon 42 U.S.C. Sec. 1983 for compensatory relief. Specifically, acting under color of law, Defendant's denied Plaintiff his rights as a citizen of Florida and of the United States. Plaintiff was entitled, when in the care, custody or control of Defendants to be treated in a fair and humane manner; to food, water, reasonable means of communication with his family and/or significant other, to be afforded the dignity to which one who enjoys the presumption of innocence is entitled, to counsel and to accommodation for his disability to the extent that it would have enabled him to comprehend the actions being taken against him.

42. Defendants consistently ignored Plaintiff's repeated requests for counsel, thereby violating his right under the 6th Amendment to the United States Constitution.

43. Defendants chained Plaintiff to a bench, denied his request for an interpreter to enable him to communicate and to comprehend the circumstances of his arrest and incarceration, and held Plaintiff in a solitary confinement cell for no justifiable reason for an inordinate and excessive amount of time without food or water, thereby violating his 8th Amendment right by inflicting cruel and unusual punishment, most particularly in light of Plaintiff's disability.

44.     As a result of Defendants' actions Plaintiff suffered emotional distress, physical and mental anguish, humiliation, embarrassment, monetary loss, loss of dignity and deprivation of civil rights.

WHEREFORE Plaintiff Steven M. Bircoll requests:

    a. Trial by jury on all issues so triable

    a. Pecuniary damages for deprivation of civil rights;

    b. Pecuniary Damages for physical and mental anguish, humiliation, embarrassment and emotional distress

    c. Compensation for monetary loss

    d. Punitive damages for deprivation of civil rights

    e. The costs of this action;

    f. The award of reasonable attorneys fees;

    g. Any and all other legal and equitable relief to which he may be deemed entitled.

## COUNT III
### Violation of the Rehabilitation Act of 1973

43.     Plaintiff realleges and reaffirms paragraphs 1-36 of this complaint as if fully set forth herein.

44.     Defendants' actions as set forth above violate Section 504 of the Rehabilitation Act of 1973, as amended. Section 504 provides that no qualified individual with a disability shall be, on the basis of disability, denied the benefits of or subjected to discrimination under any program or activity receiving federal financial assistance.

45. On the basis of his disability Plaintiff was subjected to discrimination by Defendants, to wit: Plaintiff was denied access to a telephonic device for the deaf, Plaintiff was denied an interpreter to assist him in communicating with law enforcement officials and Plaintiff was incarcerated in a solitary confinement cell where he was deprived of food and water for an inordinate and excessive amount of time because Defendants deemed him, "uncooperative" and refused to acknowledge his disability.

WHEREFORE Plaintiff Steven M. Bircoll requests:

a. Trial by jury on all issues so triable
b. Pecuniary damages for mental and physical anguish
c. Costs of this action
d. Reasonable attorneys fees
e. Any and all other legal and equitable relief to which he may be entitled.

Jay M. Levy, P.A.
Attorney for the Plaintiff
Florida Bar No. 219754
9130 South Dadeland Boulevard
Two Datran Center, Suite 1510
Miami, Florida 33156
Tel (305) 670-8100
Fax (305) 670-4827

_____
Jay M. Levy, Esq.

13

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

**05-20954**

MAGISTRATE JUDGE
SIMONTON

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
STEVEN M. B[GIV-MORENO]

**DEFENDANTS**
MIAMI-DADE COUNTY
MIAMI-DADE COUNTY POLICE DEPARTMENT
MIAMI-DADE COUNTY DEPARTMENT OF CORRECTIONS AND REHABILITATION

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: MIAMI-DADE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JAY M. LEVY, ESQ.
9130 S. DADELAND BLVD., STE 1510
MIAMI, FLORIDA 33156

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 1:05CV20954 (FAM) AMS

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 USC 1983,
SEC. 504 OF REHABILITATION ACT OF 1973
42 USC 12101

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions):
**IF ANY** JUDGE _____ DOCKET NUMBER _____

DATE 4/07/05
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 918754 AMOUNT 350 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____