UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20954-CIV-MORENO/SIMONTON

STEVEN M. BIRCOLL,

        Plaintiff,

vs.

MIAMI-DADE COUNTY,

        Defendant.
_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND III OF THE COMPLAINT AND MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7.5, Defendant Miami-Dade County (the "County") files this motion for summary judgment on counts I and III of Plaintiff Steven M. Bircoll's complaint. The County respectfully submits that it is entitled to judgment as a matter of law on Plaintiff's claims for violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (count I), and section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 (count III). In support thereof the County states as follows.

## I. INTRODUCTION[1]

This case arises out of the stop, arrest, and brief detention of Plaintiff for driving under the influence of alcohol ("DUI") on April 7, 2001. On April 7, 2005, exactly four years after the DUI arrest and on the last date that this lawsuit could be filed, Plaintiff filed his complaint against the County.

In the complaint, although not clearly stated, Plaintiff generally alleges that his DUI arrest and subsequent brief detention occurred as a result of the County's failure to accommodate his disability or discrimination against him on the basis of his disability. Complaint at ¶¶ 39-40 (count I), 46-47 (count III). On the basis of the County's alleged statutory violation, Plaintiff requests that the Court grant him injunctive relief, requiring the County to provide interpreters and auxiliary aids to deaf persons "for the purpose of facilitating the ability of deaf individuals to

---

[1] The County directs the Court to its Statement of Material Facts to provide the important factual background of this case. Undisputed facts will be referred to specifically within this motion. All references to exhibits, affidavits, depositions, and transcripts are made in accordance with the Statement of Material Facts.

communicate with law enforcement personnel at all stages of criminal investigations, incarceration and procedure."[2] *Id.* at 10. Plaintiff also requests pecuniary damages for mental and physical anguish, and an award of attorney's fees and costs associated with filing this lawsuit.[3] *Id.* at 10, 13. Plaintiff testified that he suffered no physical harm during the entire encounter. Bircoll's Dep. at 70.

The County is entitled to judgment as Plaintiff failed to allege a cognizable ADA or RA claim. Plaintiff cannot demonstrate that his DUI arrest and brief detention was caused by the County's discrimination or exclusion from a program, service, or activity, on the basis of his alleged disability. Rather, Plaintiff's DUI arrest and detention was caused by Plaintiff's illegal behavior and not the effect of his disability. In addition, Plaintiff's request for compensatory relief must be stricken as he cannot demonstrate that the allegedly discriminatory arrest or failure to appropriately accommodate his disability was the product of "intentional discrimination or bad faith" on the part of the County's personnel. Likewise, Plaintiff's request for injunctive relief must be stricken as Plaintiff did not allege and cannot establish the elements for such relief, including a showing that he is likely to suffer similar future injury by the County's alleged statutory violation. For these reasons, the County respectfully requests that this Court grant it summary judgment on Plaintiff's ADA and RA claims.

## II. THE SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law governing the case will identify those issues that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1987). The moving party bears the initial burden to show there is a lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the initial showing is met, the burden shifts to the

---

[2] The County already requires the requested injunctive relief through the Standard Operating Procedures ("DSOP") of the Miami Dade County Police Department ("MDPD") and the Miami Dade County Department of Corrections and Rehabilitation ("MDCR"). MDCR DSOP 12-007, 18-006, 19-005, Ex. 9; MPDD DSOP Ch. 21-Part 2, Ex. 10.

[3] In response to Plaintiff's complaint the County filed an answer stating that for several reasons it is entitled to judgment as a matter of law, including that Plaintiff did not allege a cognizable claim nor were his alleged damages, if any, caused by the County's violation of law. Answer at 2-3.

non-moving party to identify specific facts showing a genuine issue of material fact exists and requires trial. *Id.* at 324. The nonmovant must do more than merely show there may be some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A party may not simply rely on the allegations contained in its pleadings or mere denials but instead must demonstrate the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 1160 (1996). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to the party's case, and on which that party will bear the burden of proof. *Celotex*, 477 U.S. at 322. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993).

### III. PLAINTIFF'S ADA AND RA CLAIMS

#### A. Substantive Legal Principles

The relevant portion of the ADA states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C § 12132. The relevant portion of the RA provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'"[4] *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir.2001) (*quoting* 42 U.S.C. § 12132). "The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives

---

[4] For purposes of its motion for summary judgment the County does not dispute whether Plaintiff is a qualified individual with a disability or whether the County, including the MDPD or the MDCR, is a public entity within the definition of the ADA or RA.

3

federal financial assistance." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir.1999). Because claims brought pursuant to Title II of the ADA and the RA are "essentially identical," the Court should "consider the two statutes simultaneously[.]" *Everett v. Cobb County School Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998); *see also Randolph*, 170 F.3d at 858 ("The ADA and the RA are similar in substance and, with the exception of the RA's federal funding requirement, cases interpreting either are applicable and interchangeable." (internal quotation marks omitted)). The statute even specifically provides that "[t]he remedies, procedures and rights available under Section 504 [(the RA)] shall be the same as those available under Title II" of the ADA. 42 U.S.C. § 12133.

Title II of the ADA also directs the Attorney General to promulgate regulations to effectuate the statute. 42 U.S.C. § 12134(a). These federal regulations have been codified at 28 C.F.R. § 35, "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). Further, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2).

> The regulations define "[a]uxiliary aids and services" as including, inter alia:
>
> Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments[.]

28 C.F.R. § 35.104; *see also* 42 U.S.C. § 12102(1). A "qualified interpreter" is one "who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary." *Id.* Furthermore: "This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164. The County now turns to its analysis of this case.

### B. The DUI Arrest and Detention of Plaintiff is Not the Type of Service, Program, or Activity From Which a Disabled Person Could be Excluded or Denied the Benefit

Plaintiff alleges in count I of his complaint that the County violated the ADA because Plaintiff was excluded from participation in or denied the benefit of the services, programs, or activities of a public entity by reason of his disability. Complaint at ¶¶ 38-39. For several reasons, however, the County is entitled to judgment on this claim.

First, Plaintiff's DUI arrest is not a service, program, or activity from which a qualified disabled person could be excluded or otherwise denied the benefit. *Rosen v. Montgomery County Maryland*, 121 F.3d 154, 157 (4th Cir. 1997)(where a deaf person was arrested for drunk driving, court held that "calling a drunk driving arrest a 'program or activity' of the County, [for which] the 'essential eligibility requirements' of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent."); *Patrice v. Murphy*, 43 F.Supp.2d 1156, 1158 (W.D. Wash. 1999). As stated in *Patrice*, "casting the perpetration of a crime and any resulting arrest as a service or activity the benefit of which a disabled person has been denied strains the statutory language to, if not past, the breaking point."

> The District Court in *Patrice* further reasoned:
>
> Where underlying criminal activity has occurred, such as a bank robbery, drunken driving, or domestic violence, and the officers are engaged in an on-the-street response, investigation, and arrest, forestalling all police activity until an interpreter can be located to aid communication with the deaf protagonist would be impractical and could jeopardize the police's ability to act in time to stop a fleeing suspect, physically control the situation, or interview witnesses on the scene. The decisions we ask our officers to make under already stressful, and sometimes dangerous, circumstances should not be subjected to second guessing by comparing their in-the-field actions to the requirements of the ADA.

*Patrice*, 43 F.Supp.2d at 1159-60. This rationale in *Patrice* is in conformity with the Fourth Circuit's reasoning in *Rosen*:

> If we assume, however, that the police were required to provide auxiliary aids at some point in the process, that point certainly cannot be placed before the arrival at the stationhouse. The police do not have to get an interpreter before they can stop and shackle a fleeing bank robber, and they do not have to do so to stop a suspect drunk driver, conduct a field sobriety test, and make an arrest.

*Rosen*, 121 F.3d at 158;[5] *see Hainze v. Richards*, 207 F.3d 795, 799-802 (5th Cir. 2000)(ADA and RA claims not cognizable where police used force to restrain plaintiff).

Furthermore, as further discussed *infra*, Plaintiff was arrested and detained because there was probable cause to believe that he was driving while under the influence of alcohol and not because of the alleged failure to accomodate his disability. *Rosen*, 121 F.3d at 158; *Patrice*, 43 F.Supp.2d at 1160-61. Again, the Fourth Circuit's rationale and holding in *Rosen* is instructive and applicable:

> What the policemen should have done is beside the point, unless Rosen can show that he was somehow damaged by the failure to communicate. Rosen does not assert that better communication would have changed the events one iota, and, in the end, he is forced to fall back on his claim that he was "humiliated and embarrassed." But these are emotions experienced by almost every person stopped and arrested for drunk driving. ... [W]e cannot find an injury that would suffice to invoke the ADA's protections.

121 F.3d at 158.

Similarly to *Rosen*, in this case Plaintiff can point to no evidence demonstrating that his arrest and brief detention would have been avoided if the on the scene investigation would have been forestalled until an interpreter or auxiliary aid was procured for the purpose of providing him better communication.[6] *Rosen*, 121 F.3d at 158. Likewise, the provision of an interpreter or auxiliary aid at the MDPD's Northwest District Station (the "Substation") or at the MDCR's Turner Gulford Knight Correctional Facility ("TGK") would not have allowed Plaintiff to avoid arrest or detention, and would not have helped Plaintiff avoid any further damage in light of the fact that Plaintiff was not asked any incriminating questions after he requested an attorney through his driver's rights card.[7] Townsend's Aff. at ¶ 12; Townsend's Dep. at 18-22; Driver's

---

[5] Pursuant to this same rationale, as a matter of law, the forestallment of a stop, investigation, and DUI arrest until auxiliary aid is procured would result in an alteration of the nature of an on the scene investigation and arrest and would constitute an undue burden on police. See 28 CFR § 35.164; 29 U.S.C. § 794a(a)(1).

[6] It must be understood that the ADA does not mandate the provision of auxiliary aids, but only requires that appropriate steps be taken to provide effective communications. *Gorrell v. Delaware State Police*, 1999 WL 1893142, *3-5 (D.Del. Oct. 20, 1999)(*citing* 28 C.F.R. § 35.160). The County took appropriate steps to provide Plaintiff effective communications and believes it is entitled to judgment on this issue as a matter of law with respect to the encounter on the scene of the arrest and at the Substation. Trask's Aff.; Townsend's Aff.; Faustin's Aff.; Dooner's Aff.; Diesso's Dep. at 17-18; Bircoll's Dep. at 5-10, 14, 30, 47-49, 50-52, 53-54, 56; Transcript of May 17, 2001 Admin. Hearing at 43-44.

[7] It is doubtful that Plaintiff would have had problems communicating effectively at the Substation and at TGK as Plaintiff can read lips, speak, the personnel was aware of his disability, and both facilities are well lit. Townsend's Aff.; Bennett's Aff.; Ex. 7.

Rights Card, Ex. 6. Additionally, the police accommodated Plaintiff by calling his girlfriend and informing her that Plaintiff would be transported to TGK (Townsend's Aff. at ¶ 13; Townsend's Dep. at 31-34; Diiesso's Dep. at 17-18), and at 2:16 P.M. that same day, Plaintiff was released from TGK after his girlfriend and his friend helped bond him out.[8] Bennett's Aff. at ¶¶ 6-7; Bircoll's Jail Card, Ex. 7; Bircoll's Dep. at 71-72, 78-79. As such, Plaintiff cannot prove that his arrest and detention could have been avoided by the provision of an interpreter or an auxiliary aid.[9] *Rosen*, 121 F.3d at 158; *Patrice*, 43 F.Supp.2d at 1160-61; *see also Crocker v. Lewiston Police Dep't*, 2001 WL 114977, at *8-9 (D.Me. Feb. 9, 2001)(finding ADA claim not cognizable where police had sufficient information for probable cause arrest and plaintiff could not prove that injury, emotional damages, were incurred because of his disability rather than his illegal conduct and the police's lawful arrest); *Gorrell*, 1999 WL 1893142, at *3-5 ("In the absence of a causal connection between plaintiff's injury, if any, and his disability, a claim under [the ADA] cannot lie.").

Accordingly, Plaintiff cannot establish a cognizable ADA or RA claim for the County's purported failure to accommodate his disability. *Id.*

### C. Plaintiff's RA Claim is Without Merit as Plaintiff's Disability Did Not Cause Behavior that the Police Mistakenly Confused With Illegal Activity

Plaintiff alleges in count III of his complaint that the County violated the RA because the County's actions subjected Plaintiff to discrimination on the basis of his disability. Complaint at ¶¶ 46-47. Although not the case here, several courts have stated that a cognizable ADA or RA claim may exist where the police wrongly arrests a person because it misconceived the lawful effects of a disability as illegal conduct. *See e.g. Crocker*, 2001 WL 114977, at *6-10 (recognizing that ADA may apply to disability discrimination claim arising from arrest, where police arrests individual with a disability because it misperceives the effect of that disability as criminal activity); *Lewis v. Truitt*, 960 F.Supp. 175, 178 (S.D.Ind. 1997)(ADA claim exists where police executed arrest because it misperceived plaintiff's deafness and failure to

---

[8] Pursuant to § 316.193(9) of the Florida Statutes, the **earliest** Plaintiff, a DUI arrestee, could have been released from custody was 11:30 A.M. on April 7, 2001, eight hours after he was arrested at 3:30 A.M. Bennett's Aff. at ¶ 7; Ex. 7.

[9] This Court need not recognize any allegation of Plaintiff's "emotional damages" because (1) said "damages" resulted from Plaintiff's lawful arrest on the basis of probable cause that plaintiff was involved in illegal activity rather than his disability, and (2) Plaintiff has failed to present any actual record evidence of mental distress or other damage, aside from the actual arrest and detention. *Rosen*, 121 F.3d at 158; *Patrice*, 43 F.Supp.2d at 1160-61.

understand as the illegal conduct of failing to follow orders and resisting arrest). In this case, however, Plaintiff's DUI arrest did not occur as a result of his disability, but rather because probable cause existed to execute the DUI arrest. *Patrice*, 43 F.Supp.2d at 1158. The *Patrice* case clearly illustrates this point. *Id.*

In *Patrice*, a deaf plaintiff requested that her daughter call 911 during a dispute between plaintiff and her husband. *Id.* at 1157-58. After arriving at plaintiff's home, plaintiff wrote a narrative for the police explaining that she struck her husband first and then her husband retaliated. *Id.* After the police read plaintiff's statement and her husband alleged that plaintiff had threatened him with a knife and struck him, the police decided that it had sufficient probable cause to arrest the deaf plaintiff as the primary perpetrator of the domestic violence. *Id.* On these facts, the District Court in *Patrice* stated:

> Even if the Court were to assume that plaintiff's assertions fall within the scope of the ADA, plaintiff's claim fails .... First, plaintiff was arrested because probable cause existed ... not because she is disabled. Absent a causal link between plaintiff's disability and the injury of which she complains (her arrest), there can be no claim under § 12132.

43 F.Supp.2d at 1161.

Likewise, Plaintiff cannot carry the burden of demonstrating that his DUI arrest was effectuated without probable cause and solely due to his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). In the Eleventh Circuit, "the standard for determining the existence of probable cause is ... whether a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer."[10] *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir.1998); *see also Colosimo v. City of Port Orange*, 2005 WL 1421294, *3-6 (M.D.Fla. Jun. 16, 2005). For probable cause to exist, the arrest "must be objectively reasonable under the totality of the circumstances." *Rankin*, 133 F.3d at 1435 (*citing United States v. Clark*, 559 F.2d 420, 425 (5th Cir. 1977)(stating that "even if the officers felt that probable cause was lacking, an objective standard would still be applicable")).[11] That a defendant is subsequently acquitted, charges are dropped against the defendant, or the defendant pleads guilty or *nolo contendere* to the charges is of no consequence to the probable cause determination. *Colosimo*, 2005 WL 1421294 at *4-5.

---

[10] This standard is the same under both Florida and federal law. *Rankin*, 133 F.3d at 1433.
[11] All decisions issued by the former Fifth Circuit prior to October 1, 1981, have been adopted as binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

Whether certain facts give rise to probable cause for arrest depends on the elements of the offense. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Plaintiff was arrested for DUI under Fla. Stat. § 316.193 (Complaint/Arrest Affidavit, Ex. 3), which provides:

> A person is guilty of the offense of driving under the influence ... if the person is driving or in actual physical control of a vehicle within this state and:
>
> (a) The person is under the influence of alcoholic beverages, any chemical substance ..., or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; ....

Fla. Stat. § 316.193(1). There are three material elements to a DUI charge: (1) that the defendant was driving or in actual physical control of the vehicle; (2) that the defendant was under the influence of an alcoholic beverage or a controlled substance; and (3) that the defendant was affected to the extent that his normal faculties were impaired. *See Colosimo*, 2005 WL 1421294 at *5. Therefore, probable cause to arrest a person for DUI is "'based upon a belief that the driver is under the influence of alcoholic beverages [or a controlled substance] to the extent that his normal faculties are impaired.'" *Id.* (citation omitted).

In this case, at the time Plaintiff was stopped the police was aware of the following: (1) Plaintiff exited the Shopping Center by making a right turn onto NW 77th Court at approximately five to ten miles per hour without stopping his vehicle at a stop sign (Trask's Aff. at ¶ 4; Ex. 3); (2) Plaintiff failed to stop at the flashing red traffic light and instead entered the front end of his vehicle into the westbound lane of Miami Lakes Drive, at the intersection of Miami Lakes Drive and NW 77th Court (Trask's Aff. at ¶ 4; Ex. 3; Complaint at ¶ 8; Williams' Aff. at ¶ 3); (3) Plaintiff reversed his vehicle out of the westbound lane of Miami Lakes Drive when an oncoming car approached (*Id.*); (4) Plaintiff delayed in pulling over his vehicle after the overhead lights on the police vehicle were turned on (Trask's Aff. at ¶ 4, Ex. 1); and (5) Plaintiff had red and watery eyes and the odor of an alcoholic beverage emanated from Plaintiff (Trask's Aff. at ¶ 4).[12] Based on these factors sufficient probable cause to arrest Plaintiff for DUI existed prior to Plaintiff's further interaction with the police and prior to Plaintiff's performance of the roadside sobriety exercises. *See Colosimo*, 2005 WL 1421294 at *5 (finding sufficient probable cause for DUI arrest after police observed plaintiff weaving in traffic and upon stop stating that

---

[12] Plaintiff admits drinking alcohol that night at the restaurant. Bircoll's Dep. at 31-34; Diesso's Dep. at 12-17. In addition, officers Townsend and Dooner smelled an odor of alcoholic beverages on Plaintiff. Townsend's Aff. at ¶ 6; Dooner's Aff. at ¶ 3.

he had two drinks long before stop); *Lee v. Ferraro*, 284 F.3d 1188, 1196-97 (11th Cir. 2002)(relying on *Atwater v. City of Lago Vista*, U.S. 318 (2001) and Fla. Stat. § 901.15 to hold that full custodial arrest is allowed when police has sufficient probable cause to believe that a misdemeanor was committed); *Sullivan v. Dep't of Highway Safety & Motor Vehicles*, 10 Fla. L. Weekly Supp. 304 (Fla. 19th Cir. Ct. Nov. 20, 2002)(officer had probable cause based on the odor of alcohol and defendant's reckless driving); *Wacker v. Dep't of Highway Safety & Motor Vehicles*, 11 Fla. L. Weekly Supp. 489 (Fla. 9th Cir. Ct. Feb. 18, 2004)(officer had probable cause based on "odor associated with alcoholic impurities" coming from defendant's breath, bloodshot, watery, red, and glassy eyes, and production of insurance card when asked for a license); *State v. Sopko*, 10 Fla. L. Weekly Supp. 987 (Fla. 17th Cir. Ct. Oct. 2, 2003)(officer had probable cause based on observations of defendant's driving, her left turn from right hand lane, the need for others to evade defendant, and odor of alcohol).

In addition, after the police requested that Plaintiff exit his vehicle, Plaintiff (1) rejected the police's attempt to communicate in American Sign Language (Trask's Aff. at ¶ 7; Bricoll's Dep. at 47), and communicated verbally and responded to sound (Trask's Aff. at ¶ 8; Faustin's Aff. at ¶ 5; Bircoll's Dep. at 5-10, 14, 30, 50-52, 54; Transcript of May 17, 2001 Admin. Hearing at 43-44). It is also clear on the record that at the minimum, Plaintiff understood the police's request that he perform certain exercises, the police instructed and demonstrated the roadside sobriety exercises, Plaintiff attempted to perform the exercises and performed the Romberg balance exercise to standard, and Plaintiff understood the walk and turn and one leg stand exercises but did not perform these exercises to standard. Trask's Aff. at ¶¶ 6-13; Faustin's Aff. at ¶¶ 4-10; DUI Test Report, Ex. 2; Ex. 3; Bircoll's Dep. at 5-10, 14, 30, 50-52; Transcript of May 17, 2001 Admin. Hearing at 43-44. Plaintiff can present no evidence that the police misinterpreted his alleged hearing impairment as illegal activity, or stated alternatively, that he would not have been arrested had he not been disabled or had he been provided with services to ameliorate the effects of his alleged disability. Rather Plaintiff's actions, as observed by the police, gave rise to probable cause for a DUI arrest. *Rosen*, 121 F.3d at 158; *Patrice*, 43 F.Supp.2d at 1159-60; *see also Bates ex rel. Johns. v. Chesterfield County*, 216 F.3d 367, 373 (4th Cir. 2000)("And Bates was not arrested because of his disability. Rather, he was arrested because there was probable cause to believe that he assaulted a police officer."); *Gohier v. Enright*, 186 F.3d 1216, 1221-23 (10th Cir. 1999)(finding ADA claim without merit where

plaintiff was shot because of his unlawful conduct rather than the police's misperception of plaintiff's lawful conduct caused by the effects of plaintiff's disability); *Crocker*, 2001 WL 114977, at *6-10.

The Fifth Circuit's reasoning and holding in *Hainze* is aptly applicable and should be followed to hold that the County is entitled to judgment on Plaintiff's ADA and RA claims:

> Despite Hainze's claims, we hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and **any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.** ...We simply hold that such a claim is not available under Title II under circumstances such as presented herein.

207 F.3d at 801 (emphasis added).

### D. Plaintiff is Not Entitled to Compensatory Damages

In count III of his complaint Plaintiff requests that on the basis of the County's purported RA violation this Court award him pecuniary damages. Complaint at 13. Plaintiff's request, however, should be stricken as the County is entitled to judgment on this issue.

In order to recover compensatory damages under the ADA or RA, a plaintiff must demonstrate "intentional discrimination or bad faith." *Wood v. President & Trustees of Spring Hill College in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir.1992); *see also C.P. v. Leon County School Board*, 2005 WL 2133699, *4 n. 7 (N.D.Fla. Aug. 27, 2005); *Badillo v. Court Administrator Officer*, 2005 WL 1027176, *5 (M.D.Fla. Apr. 28, 2005). In other words, "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under [the ADA or RA]." *Wood*, 978 F.2d at 1219.

As discussed above, Plaintiff cannot demonstrate that he was arrested and detained as a result of his disability or the County's purported failure to provide him an interpreter or auxiliary aids. As such, Plaintiff cannot demonstrate intentional discrimination or bad faith on the basis of

11

his disability on the part of MDPD or MDCR personnel. *Rosen*, 121 F.3d at 158; *Patrice*, 43 F.Supp.2d at 1159-60; *Badillo*, 2005 WL 1027176 at *5.

In addition, Plaintiff testified that sergeant Trask attempted to communicate in American Sign Language, which he did not understand, and at the minimum, also attempted to communicate by instructing him on and demonstrating the roadside sobriety exercises. Bircoll's Dep. at 47, 50-52, 53, 56. It is undisputed that on April 7, 2001, Plaintiff responded to sound, as he was wearing his hearing aids, and reads lips sufficiently well to verbally respond to police and engage in the roadside sobriety exercises. *Id.* at 5-7, 9, 14, 30, 47, 50-52, 53, 56; Transcript of May 17, 2001 Administrative Hearing at 43-44. Indeed, Plaintiff specifically testified that he understood that if he performed the exercises to standard he may be allowed to go on his way (Bircoll's Dep. at 47-49), and that he understood and performed the walk and turn and the one leg stand exercises. *Id.* at 52-53, 56. Plaintiff also understood the situation and communicated sufficiently well to ask whether he could perform the walk and turn test after taking off his boots. *Id.* at 51. Lastly, Plaintiff understood sufficiently to perform the romberg balance exercise to standard. Trask's Aff. at ¶ 9; Ex. 2. The reality is that the roadside exercises that the police requested Plaintiff perform are simple and, if sober, are easily understood and imitated.

Furthermore, there is no evidence that personnel at the Substation or at TGK ever intentionally discriminated against him on the basis of his disability. To the contrary, it is undisputed that at the Substation Townsend accommodated Plaintiff by making a phone call to his girlfriend on his behalf (Townsend's Aff. at ¶ 13; Diiesso' Dep. at 17-18), and at TGK the personnel recognized Plaintiff's alleged disability, and for his own protection, placed him in a cell separate from other inmates that may have tried to take advantage of him because of his disability. Bennett's Aff. at ¶¶ 4, 6-7; Ex. 7. The Court must also note that Plaintiff cannot impute his belief of what the motivation or the state of mind of County personnel was; rather the record evidence shows that the County personnel testified that they in good faith continually attempted to communicate with and actually established verbal or written communication with Plaintiff. Trask's Aff.; Townsend's Aff.; Faustin's Aff.; Dooner's Aff. As such, Plaintiff's request for compensatory damages must be stricken. *Badillo*, 2005 WL 1027176 at *7 (granting summary judgment on ADA and RA claims where plaintiff could present no evidence demonstrating that the asserted failure of the defendant to provide the correct accommodation was the product of bad faith or intentional discrimination).

### E. Plaintiff is Not Entitled to Injunctive Relief

The Court must strike Plaintiff's request for injunctive relief because he cannot prove the elements necessary to establish entitlement to such relief. To obtain injunctive relief, a plaintiff must allege: (1) that he has suffered an injury-in-fact; (2) the existence of a "causal connection between the asserted injury-in-fact and the challenged action of the defendant;" (3) that the injury will be redressed by a favorable decision; and (4) "a real and immediate--as opposed to a merely conjectural or hypothetical--threat of future injury." *Shotz*, 256 F.3d at 1081.

In this case, in addition to Plaintiff's inability to demonstrate an injury[13] or a causal connection between any asserted injury and the County's alleged illegal action (*supra*), Plaintiff, who lives in Broward, has not alleged, nor is there any evidence in the record, that he will be arrested again in Miami-Dade County and discriminated against or denied any benefit by the County on the basis of his disability. Such possibility is even more remote in light of the MDPD and MDCR's respective DSOP's directing compliance with the ADA and RA when personnel interacts with the disabled. MDCR DSOP 12-007, 18-006, 19-005, Ex. 9; MDPD DSOP Ch. 21-Part 2, Ex. 10. In fact, the very injunctive relief sought by Plaintiff, that the County take appropriate steps to accommodate the hearing impaired with interpreters and other auxiliary aids (Complaint at 10), has been required by MDCR DSOP 12-007 and MDPD DSOP Ch. 21, Part 2, Annex B, prior to April 7, 2001. Ex. 9, 10. Therefore, in light of the MDPD and MDCR DSOPs, and Plaintiff's inability to show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future, the Court should strike Plaintiff's request for injunctive relief as moot and for lack of standing under Article III of the Constitution. *Shotz*, 256 F.3d at 1081 (plaintiff lacks standing to pursue injunctive relief because she cannot allege facts giving rise to an inference that she will suffer future discrimination by the defendant); *Hainze*, 207 F.3d at 802 (finding plaintiff lacked standing to seek declaratory or injunctive relief as his injuries were caused by his own criminal actions and he could not establish a real and immediate threat that he would be wronged again by defendant).

---

[13] Again, aside from the arrest and brief detention, the Plaintiff has not produced any record evidence of damages. And even if Plaintiff could produce evidence of injury, Plaintiff cannot demonstrate that any such alleged injury was caused by the County's alleged statutory violation.

13

*Bircoll v. Miami-Dade County*, Case No. 05-20954 Civ-Moreno/Simonton

## CONCLUSION

For all the foregoing reasons, Plaintiff's ADA and RA claims are without merit. Accordingly, the Defendant is entitled to summary judgment on counts I and III of the complaint.

Respectfully submitted,

MURRAY A. GREENBERG
Miami-Dade County Attorney
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Tel: (305) 375-5151
Fax: (305) 375-5634
E-mail: eah@miamidade.gov

By: *Eric Hernandez*
Eric A. Hernandez
Assistant County Attorney
Florida Bar No. 340730

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed via U.S. Mail this 17th day of October, 2005 to: Jay M. Levy, Esq., 9130 S. Dadeland Blvd., Suite 1510, Two Datran Tower, Miami, Florida 33156.

*Eric Hernandez*
Assistant County Attorney