FILED by ___ D.C.
ELECTRONIC

**Nov 22 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

STEVEN M. BIRCOLL,                    CASE NO: 05-20954-CIV-MORENO

                                      MAGISTRATE JUDGE SIMONTON

      Plaintiff,

vs.

MIAMI-DADE COUNTY, et. al.,

      Defendants.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Procedural History

Plaintiff Steven Bircoll (hereinafter "Bircoll") filed suit against Defendant Miami-Dade County (hereinafter "MDC").  The counts of Bircoll's complaint (DE #1) with which the instant motion is concerned are count I, violation of Title II of the Americans with Disabilities Act (hereinafter "ADA") and count III, violation of the Rehabilitation Act of 1973 (hereinafter "§504").[1]  The gravamen of count I is that MDC failed to provide Bircoll with the programs or activities of a public entity by failing to provide a telephonic device for the deaf and an interpreter to assist him in

---

[1]     Count II, an action brought under 42 U.S.C. §1983, is the subject of a separate Motion for Judgment on the Pleadings.

1

59/wc

communicating with police and corrections officers (Complaint ¶39). Bircoll seeks injunctive relief compelling MDC to provide deaf individuals within their care, custody and/or control to provide telephonic devices for the deaf and qualified interpreters.2 The claim under the Rehabilitation Act is that Bircoll was subjected to discrimination by MDC in that he was denied access to a telephonic device for the deaf, denied an interpreter to assist him in communication with law enforcement officials and incarcerated in solitary confinement because MDC deemed him uncooperative and refused to acknowledge his disability (Complaint ¶45). Bircoll seeks an award of damages for his mental and physical anguish as well as "all other legal…relief to which he may be entitled." MDC's answer (DE #15) denies the material allegations of the complaint and interposes multiple affirmative defenses, including that Bircoll did not suffer "any material injury nor incurred damages" which were caused by MDC (Affirmative Defenses ¶5), that MDC acted in good faith and for legitimate, non-discriminatory, and non pretextual reasons (Affirmative Defenses ¶1) and Eleventh Amendment immunity (Affirmative Defenses ¶7).3

---

2       The regulations promulgated by the Department of Justice under Title II of the ADA indicate that auxiliary aids and services available under the ADA include, *inter alia,* qualified interpreters, notetakers, transcription services, written materials, and telecommunications devices for deaf persons. 28 C.F.R. §35.104. A public entity is required under 28 C.F.R. §160(a) to "take appropriate steps to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by the public entity."

3       In response to Requests for Admission, MDC admitted that the Miami-Dade Police Department and the Miami-Dade Department of Corrections have received funds from the federal government form 2000-2005. Pursuant to the Eleventh Circuit's decision in *Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288 (11th Cir. 2003), which reaffirmed its prior decision in *Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999), *overruled on other*

MDC has now moved for summary judgment as to Counts I and III.  Bircoll submits this memorandum in opposition to the motion.  This memorandum is written in opposition to the motion.

Statement of the Facts4

A few preliminary observations are appropriate.  The facts set forth in this statement of the facts are taken directly from Bircoll's deposition.  Bircoll's testimony as to the traffic stop that led to his arrest for DUI differs significantly from that of Sergeant Trask and the other officers.   To the extent that Bircoll's statement of the facts differs from that of MDC, Bircoll relies on the facts as delineated in this memorandum.5

This court should be advised that at the time of the prosecution from the DUI arrest which is the basis of the claims contained in the instant lawsuit, the instant matter was a cause celebre and received significant media attention.  Consequently the

---

*grounds, Alexander v. Sandoval,* 532 U.S. 275 (2001), Eleventh amendment immunity is waived if a public entity continued to receive federal funds after the enactment of the Rehabilitation Act.  For this reason, MDC has abandoned the defense of Eleventh Amendment Immunity.

4        The facts and all inferences there from should be drawn in the light most favorable to Bircoll as the party opposing the motion for summary judgment. *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 f.3d 1146 (11th Cir. 2005). All reasonable doubts about the facts are resolved in favor of Bircoll as the non-movant.  *Gerling Global Reinsurance Corporation of America v. Gallagher*, 267 F.3d 1228 (11th Cir. 2001).

5        The following designations will be used in this memorandum.  The letters "SB" shall represent the deposition of Steven Bircoll.  The letters "CT" shall represent the deposition of Sergeant Charles Trask.  The letters "JD" shall represent the deposition of Officer Jim Dooner.  The letters "ET" shall represent the deposition of Officer Everett Townsend.

3

officers involved "circled their wagons" to justify the arrest.  However there remain

significant issues as the credibility of these officers.  For example, Officer Dooner

testified that he observed Bircoll engaging in a conversation on the telephone which

was in the DUI processing room (JD 30-31).  This is an impossibility since Bircoll

does not have the ability to engage in a telephone conversation due to his deafness.

Similarly Sergeant Trask testified that he had established effective communication

with Bircoll but the basis of this statement is suspect at best.  As he testified:

> Q.    (By Mr. Levy)  It's 3:00 in the morning, it's dark out,
> you're standing in front of him presumably because that's
> the way to effectuate communications but you didn't know
> he could read lips at that point in time so how is – what is
> your understanding as to how he's understanding you, what
> is the basis by with which he's understanding you, is it
> because you thought he could hear or because you thought
> he could read your lips?  What did you understand at that
> point in time?
>
> A.    As to how the communication was established?
>
> Q.    Yes Sir.
>
> A.    My understanding at that time was that an increased
> volume would – was sufficient to make him and because
> you were speaking loudly you thought that he could hear.
>
> Q.    So not to mince any words but because you were talking
> loudly to him that is the basis by which you believed he
> was understanding you?
>
> A.    That and also by maintaining eye contact making sure his
> attention didn't wander.

4

Q.      Because he was focused on you and because you were speaking loudly you thought that he could hear you?

A.      Yes.

Q.      And your opinion as to that there was effective communication had nothing to do with whether or not he could read your lips?

A.      That's true.

(CT 88-89)

Trask's testimony is further suspect because he testified at his deposition that Bircoll followed his instructions with his eyes open *and his eyes closed* (CT 77). This is impossible given Bircoll's deafness. Nevertheless when informed of Bircoll's deafness, Trask refused to concede that Bircoll could not hear him (CT 76-78). This reflects adversely on Trask's credibility. A further adverse reflection on Trask's credibility is the statement at ¶7 of his affidavit that he attempted to "communicate with Bircoll by using the American Sign Language alphabet." Contrary to the statement of MDC at page 10 of its memorandum of law, Trask indicated that he could not communicate in American Sign Language (CT 35). He further indicated that he learned to finger spell the alphabet in American Sign Language by "reading a book" (CT 35), that his proficiency to finger spell had never been tested and he had only attempted to finger spell on one occasion with a deaf person (CT 36). Bircoll suggests

5

that this credibility issue as well as his denial that he committed any traffic violation creates a triable issue of fact as to whether Trask had probable cause to conduct the traffic stop.

Bircoll is a deaf individual who can not hear in his left hear and has only 10% hearing in his right ear (SB 5).  He has the ability to read lips provided that he has face to face contact with the speaker, there is good light, little ambient noise, and the individual talks loudly and speaks slowly (SB 5, 7, 29, 83).  Due to his deafness, Bircoll has a speech impediment (SB 46).  As a result people don't understand him (SB 85).

On the night of the incident in question, Bircoll went to dinner with his girl friend, Darlene Diesso, during which he had one drink, a 7 & 7 (SB 33).6  After an argument with his girlfriend, he went for a drive and ended up in Miami Lakes (SB 34-35).  There he was subjected to a traffic stop by Sergeant Trask of the Miami-Dade Police Department (SB 39-40).  Bircoll denied committing any traffic offense (SB 41).  He denied having the smell of alcohol on his breath because he had "half a drink" (SB 46).  He denied driving in an erratic manner and indicated he was driving the car "normal, perfectly well" (SB 85).

---

6        In its motion for summary judgment, MDC cites to the deposition of Darlene Diesso taken in the criminal prosecution resulting from Bircoll's DUI arrest.  Diesso cannot be located and her deposition has not been taken in the case at bar.  Bircoll objects to the use of Diesso's deposition by MDC since the deposition is hearsay and Diesso will not be testifying at trial.  Consequently her testimony cannot be offered in support of MDC's motion for summary judgment.

6

Bircoll was pulled over by Sergeant Trask on Miami Lakes Drive in an area where there was little lighting (SB 46).  According to Bircoll, he had a hard time understanding Trask because he had a heavy mustache and it was dark (SB 47).  Although Bircoll repeatedly advised Trask that he was deaf, Trask apparently did not believe him (SB 47).   Bircoll repeatedly asked Trask for someone to assist in facilitating communication  (SB 85).  Trask stood 5 to 6 feet away from Bircoll when they spoke (SB 80).  Trask proceeded to administer roadside sobriety tests (SB 47-49).  Bircoll advised Trask that he could not do the tests because he did not understand Trask (SB 49, 53).7  As to certain tests which Bircoll completed, Bircoll indicated he had completed the test satisfactorily (SB 51-52).8

After the tests, Bircoll was handcuffed and placed in Trask's police cruiser (SB 54).  He was not advised that he was under arrest (SB 54).  Trask continued to talk to Bircoll while driving him to the police station but Trask's back was to Bircoll and Bircoll couldn't understand him (SB 56).

When he arrived at the police station, Bircoll was placed under the custody Officer Everett Townsend, an officer certified to operate the Intoxilyzer machine.

---

Since MDC will be unable to adduce the testimony at trial.

7       Some of the tests required Bircoll to close his eyes and follow Trask's instructions (SB 48-50), an impossible task for a deaf individual.

8       In support of its motion for summary judgment, MDC has filed affidavits from Sergeant Trask and Officers Everett Townsend, James Dooner and Jean Faustin.  The use of affidavits from Trask, Townsend and Dooner is

Officer Townsend tried to communicate with Bircoll by sitting next to him on a bench. Bircoll testified that he had a hard time understanding Townsend because they were side by side and Townsend did not look at him (SB 58, 60, 87). As a result Bircoll only saw half of Townsend's lips (SB 87). Townsend was reading a piece of paper to Bircoll but was facing forward not looking at Bircoll. As a result, Bircoll could not understand him (SB 59). Although Townsend was reading papers, Bircoll could not understand anything because he could not read his lips while facing sideways (SB 61, 67). No one attempted to write notes to Bircoll or communicate in writing (SB 70). Eventually Bircoll pulled a card out of his wallet which stated that he wanted a lawyer (SB 61).

Bircoll denied that he refused to take an Intoxilyzer test and indicated that he was never asked to take the test (SB 67). If he had understood that the officers wanted him to take the Intoxilyzer test, Bircoll would have taken it (SB 74). Due to his failure to take the breath test, Bircoll's driver's license was suspended pursuant to Florida Law for twelve months (SB 27, ET 45).

Bircoll was then transported to the Turner Guilford Knight Correctional Facility (hereinafter "TGK") (SB 68). While at TGK Bircoll was never offered a phone for the hearing impaired ("TTY") even though he asked for one but was advised that the pay

---

suspicious since each had his deposition taken in the case at bar.

phones on the wall were the only phones available (SB 68-69).  Bircoll requested a TTY on several occasions.  While incarcerated at TGK, Bircoll was not given any food or water (SB 70).  He was eventually picked up at TGK by a friend of his, Jim Hewitt (SB 71).  Hewitt came to TGK with Diesso (SB 72).

The DUI charge was nolle prossed by the Miami-Dade State Attorney's office (CT 65).

Argument

Title II of the ADA prohibits discrimination on account of disability. 42 U.S.C. §12132 states:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

*See also:*  28 C.F.R. §35.130(a).  In order prove a prima facie case of disability discrimination under the ADA, Bircoll must prove (1) that he is a "qualified individual with a disability;" (2) that he was "excluded from participation in or … denied the benefits of the services, programs, or activities of a public entity;" (3) by reason of such disability.  *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001).  The discrete issue presented by MDC in its motion for summary judgment is whether the arrest, interrogation, and incarceration of Bircoll by MDC is a service, program or activity

9

which implicates the ADA.  MDC relying on out-of-date authority argues that an arrest does not constitute a program or activity within the meaning of the ADA.  For the reasons which follow, MDC's motion should be denied on this point.

A

The relationship of the ADA to police activity has been a subject of ongoing discussion by the Federal Courts.  The leading case in this circuit is *McCray v. City of Dothan*, 169 F.Supp.2d 1260 (M.D.Ala. 2001), *rev. on other grounds*, 2003 WL 23518420 (11th Cir. 2003).9  There the District Court adopted the rationale of the Fifth Circuit in *Hainze v. Richards*, 207 F.3d 795 (5th Cir.), *cert. den.* 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000), as follows:

> In short, police activity is a government program under the ADA, but only when the circumstances surrounding the activity is "secure" and there is "no threat to human safety." *Hainze,* 207 F.3d at 902.  The requirement that the area be secure provides police officers a bright line so that they need not endanger their lives or the lives of innocent citizens worrying whether the steps taken in hot pursuit of a suspect comply with the ADA.  In other words, police investigative activities are government programs, but it is per se reasonable to disregard a suspect's disability until overriding concerns of public safety are ensured.  At that time, the reasonableness of the accommodation required of the police officers is an issue of fact which will vary with regard to the nature of the activity in relation to the qualified individual's disability.

---

9       The appellate decision in *McCray* concerned only issues relating to qualified immunity and did not reach any of the issues which are germane to the instant case.

10

*Id.* at 1275.

Applying this holding to the case at bar, the ADA clearly applies to Bircoll's sobriety testing, station house interrogation and incarceration at TGK.  Assuming that there was probable cause to stop Bircoll, once he was stopped, he was secure and presented no threat to the public safety.  As a result, the case at bar is on the side of the "bright line" established by *McCray* which applies the ADA.  *See also:  Gohler v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999)("A broad rule categorically excluding arrests from the scope of Title II… is not the law").

In *Calloway v. Borough of Glassboro Department of Police*, 89 F.Supp.2d 543, 554 (D.N.J. 2000), the court determined that mere investigative questioning in a police station was an activity of a public entity warranting coverage under the ADA and Section 504.  As the Court noted:

> I find the reasoning of the [*Pennsylvania Department of Corrections v.*] *Yeskey*[, 524 U.S. 206, 118 S.Ct. 1952, 141 l.Ed.2d. 215 (1998)] and *Gorman* [*v. Bartch*, 152 F.3d 907 (8th Cir. 1998)] Courts applicable in the context of station-house investigative questioning because it qualifies as an "activity" under the disability and Rehabilitation Acts.  First the statutory definition of "[p]rogram or activity" in Section 504 of the Rehabilitation Act includes "***all*** of the operations of –(1)(A) a department … of a local government." 29 U.S.C. §794(b)(emphasis added).  Next, the ordinary and natural meaning of "activity" is a "natural or normal function or operation," or "an organization unit for performing a specific function."  Webster's third new

11

> International Dictionary 22 (1993); *see also Yeskey,* 119
> F.3d at 170; *Bailey v. United States*, 516 U.S. 137, 145, 116
> S.Ct. 501, 133 l.Ed.2d 472 (1995)(stating that a word in a
> statute "must be given its 'ordinary or natural meaning'").
> Finally, the broad scope of the DOJ regulations, extending
> coverage to "all services, programs, and activities provided
> or made available by public entities," clearly support the
> application of the Disability and Rehabilitation Acts to
> station-house investigation questioning.

Id. at 555.

In so holding the *Calloway* court distinguished *Rosen v. Montgomery County Maryland*, 121 F.3d 154 (4th Cir. 1997) for two reasons.  First, the *Calloway* court concluded that since *Rosen* preceded the Supreme Court's decision in *Pennsylvania Department of Corrections v. Yeskey, supra.* which applied the ADA to state and local corrections programs, the rationale of *Rosen* was no longer valid.10  Second, the *Calloway* court noted that *Rosen* relied upon *Gorman v. Bartch*, 925 F.Supp. 653 (W.D. Mo. 1996), which had been reversed.  *Gorman v. Easely*, 152 F.3d 907 (8th Cir. 1998)(Relying on *Yeskey*, court concluded that inadequacy of post arrest transportation fell within framework of ADA and §504).  *See also:  Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002), *cert. den.* 538 U.S. 921, 123 S.Ct. 150, 155 L.Ed.2d 311 (2003)(*Rosen* is based on reasoning that was discredited by the Supreme Court in *Yeskey*).  As the legal underpinning of *Rosen* no longer has validity and as

---

10     As noted by Justice Scalia writing for a unanimous court in *Yeskey*, noted the ADA covers state institutions

12

*Rosen* has never been adopted in this circuit, it is not a valid statement as to the applicability of the ADA to an arrest and an arrest is a program or activity within the meaning of the ADA particularly in the case at bar which involved a secure situation. The motion for summary judgment should be denied.

In its memorandum of law, MDC argues that Bircoll can point to no evidence that the presence of an interpreter would have avoided his arrest or detention. Memorandum at 6.  This is incorrect.  At the very least Bircoll clearly indicated that he did not understand that Officer Townsend wanted him to be tested by the Intoxilyzer nor did he understand the consequences which would occur if he did not take the test.  Bircoll indicated that he was never asked to take the test and that he would have taken it if he had understood that the officers wanted him to take the Intoxilyzer test (SB 67, 74).  This gap in communication could have been easily resolved if MDC had furnished Bircoll with an appropriate auxiliary aid in order to maintain effective communication.  Significantly, if Bircoll had passed the Intoxilyzer test, in all probability he would not have been arrested for DUI and would have been free to go.  Moreover, even if he had taken the test and failed, he would not have had his license suspended.  Consequently, the furnishing of an interpreter or other auxiliary aid would have enabled Plaintiff to avoid further damage.  Under these

---

without any exception that could cast the coverage of prisons into doubt. 524 U.S. at 209-210, 118 S.Ct. at 1954-1955.

13

circumstances Bircoll has a cognizable claim under the ADA.

B

MDC contends that Bircoll's §504 claim lacks merit because the Plaintiff's disability did not cause behavior that the Police mistakenly confused with illegal activity. MDC's analysis is faulty because there are two (2) entirely separate theories upon liability can be predicated upon the ADA in an arrest situation. The first is that the policy wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity. The second is that, while the police properly investigated and arrested a person with a disability for a crime unrelated to that disability, they failed to reasonably accommodate the disability in the course of investigation or arrest causing the person to suffer greater injury or indignity in that process than the other arrestees. *Gohier v. Enright, supra.* at 1220-1221; *Anthony v. City of New York*, 2001 WL 741743 (S.D.N.Y. 2001). *aff.* 339 F.3d 129 (2nd Cir. 2003). The instant case fits within the rubric of either type of ADA claim.

As to the first type, Bircoll testified at his deposition that he has a speech impediment caused by his deafness which makes him difficult to understand (SB 46, 85). He indicated that Sergeant Trask thought he had been drinking because of the way he spoke (SB 46). The foregoing evidence is sufficient to bring this matter within the first group of cases since the police misperceived Bircoll's speech impairment

14

caused by his inability to hear as evidence that he was DUI.

The evidence previously outlined also brings this case within the second ADA situation discussed by the court in *Gohier*.  As noted previously, if the police would have accommodated Bircoll's disability by provided him appropriate auxiliary aids under the ADA, Bircoll would have understood that he was obligated to take the Intoxilyzer test and would have entirely avoided the suspension of his driver's license. At the same time, the test could have corroborated Bircoll's position that he was not intoxicated which would have exonerated him from the DUI charge.  Thus the case at bar presents a situation where the failure to accommodate caused Bircoll greater injury or indignity than non-disabled individuals.  For this reason the motion for summary judgment should be denied on this point.

## C

MDC contends that Bircoll is not entitled to an award of compensatory damages because he cannot establish intentional discrimination or bad faith on the part of MDC. As cited by MDC, the Eleventh Circuit in *Wood v. President and Trustees of Spring Hill College*, 978 F.2d 1214, 1219 (11th Cir. 1992) indicated that "plaintiffs who proceed under a theory of disparate treatment in section 504 actions must prove intentional discrimination or bad faith in order to recover compensatory damages." *See also:  Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998). *cert. den.* 526

15

U.S. 1159, 119 S.Ct. 2049, 144 L.Ed.2d 216 (1999); *Powers v. MJB Acquisition Corporation*, 184 F.3d. 1147 (10th Cir. 1999).   The court in *Proctor v. Prince George's Hospital Center*, 32 F.Supp.2d 820, 828-829 (D.Mary. 1998) addressed the issue of intent in the context of accommodation:

> The concept of intent in an accommodations case such as this one is markedly different from the concept of intent in employment discrimination cases or in cases involving a palpable bias or animus against disabled persons.  In those cases, there is a negative action taken toward an employee because of is or her disability (most often a termination or an alteration in the terms or conditions of employment) or an adverse action taken against a group of disabled individuals because of their disability.  In the instant case, however, as in all accommodations cases, the concept of intent is more difficult to pinpoint because it is the defendant's failure to provide the plaintiff with an advantage which is the very subject of the "discrimination."

The *Proctor* court went on to hold that there is no requirement of discriminatory animus.   Intentional discrimination can be established by proof of deliberate indifference.  *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *Bartlett v. New York State Board of Law Examiners*, 156 F.3d. 321 (2nd Cir. 1998), *rev. on other grounds* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999); *Powers v. MJB Acquisition Corporation, supra.*   The deliberate indifference test has two elements. First the Plaintiff must alert the public entity of his need for accommodation.  Second, the public entity must undertake a fact-specific investigation to determine what

16

constitutes a reasonable accommodation.      *Duvall v. County of Kitsap, supra.* at

1139.  As noted by the court in *Roe v. Nevada*, 332 F.Supp. 1331, 1341 (D. Nev.

2004):

> Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." [Citations Omitted].  The first element is satisfied if the public entity has notice that an accommodation is required.  *Id.*  The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness."  *Id.*  Under the second element, "a public entity does not 'act' by proffering just any accommodation:  it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable.

In *Bartlett v. New York State Board of Law Examiners, supra.*, the court found

sufficient proof of deliberate indifference on the part of the public entity where the

entity had a policy of denying accommodations to any learning disabled bar applicant

who achieved a set score on an objective test.

There is a view of the evidence in the instant case which establishes that Trask

and his fellow officers were deliberately indifferent.  Bircoll testified at his deposition

that he repeatedly asked Trask and the other officers for someone to assist in

facilitating communication (SB 85-86).  Bircoll repeatedly advised Trask and the

other officers that he was deaf (SB 47-48, 86). Consequently, the first prong of the

17

deliberate indifference test is met in the case at bar.  There is also evidence that despite Bircoll's request no individualized assessment was made of what accommodation would be appropriate.  None of the auxiliary aids defined by the ADA were utilized to facilitate communication.  Bircoll specifically testified that no one attempted to write notes or communicate in writing (SB 70).  Sergeant Trask's testimony that he established communication with Bircoll, a profoundly deaf individual, by talking loud and maintaining eye contact, is insufficient to establish an individualized assessment as to what accommodation would be appropriate, particularly when some of the roadside tests required Bircoll to close his eyes and follow instructions while his eyes were closed, and Bircoll repeatedly indicated that he didn't understand and wanted assistance with communication.  In its memorandum of law, while MDC sets forth some of the events during the roadside tests which indicate there may have been *some* communication, it never addresses whether there was effective communication between Bircoll and the officers so that Bircoll had the same communication with the officers as a hearing person.  It must be considered that Bircoll specifically testified that he had difficulty understanding Trask due to his mustache, the darkness and because Trask was shining a flashlight in Bircoll's eyes and that Bircoll advised Trask that he did not understand him (SB  47-48, 53).  In addition MDC does not  address the events at the stationhouse and the continued

18

failure to supply Bircoll with auxiliary aids sufficient to establish communication notwithstanding his repeated requests.

Trask contended that Bircoll was not deaf but was hard of hearing (CT 32).[11] As Trask never considered that Bircoll was deaf and failed to comply with Bircoll's requests, he never conducted the appropriate inquiry to determine the necessary accommodation for Bircoll's disability. This is evidence of deliberate indifference on the part of MDC to Bircoll's disability and for this reason, Bircoll can recover compensatory damages in this case. The motion for summary judgment should be denied.

D

MDC's final position is that Bircoll is not entitled to injunctive relief. First, as set forth in this memorandum, Bircoll has established an injury-in-fact, a causal connection between the injury-in-fact and the challenged action of the defendant, and that the injury will be redressed by a favorable decision. Second, as Bircoll continues to use the highways of Miami-Dade County, he is subject to traffic stops and the same type of conduct that forms the basis of his complaint. *Compare: Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001)(Plaintiffs never returned to facility where discrimination occurred since the incident). For this reason injunctive relief is properly sought in the

---

11      In a supplemental response to Plaintiff's Requests for Admissions, MDC now admits that "Plaintif had a hearing

19

case at bar and this portion of MDC's motion for summary judgment should be denied.

Conclusion

Based upon the foregoing cases, statutes, and arguments, MDC's motion for summary judgment should be denied as triable issues of fact remain for a jury's determination.

> JAY M. LEVY, P.A.
> 9130 South Dadeland Boulevard
> Two Datran Center, Suite 1510
> Miami, Florida  33156
> Telephone No:  (305) 670-8100
> Facsimile No:    (305) 670-4827
>
> BY:  /s/  Jay M. Levy
>       JAY M. LEVY, ESQUIRE
>       FLORIDA BAR #: 219754

Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was faxed and mailed to Eric A. Hernandez, Assistant County Attorney, Miami-Dade County Attorney, 111 NW 1st Street, Suite 2810, Miami, Florida, 33128, this 21st day of November, 2005.

---

disability on April 7, 2001.  Copy attached hereto as Exhibit "A".  The medical documentation supplied by Bircoll in

_____

Attorneys for Plaintiff

---

response to MDC's request for production clearly indicates that Bircoll is deaf.  Bircoll so testified.

21

UNITED   STATES   DISTRICT   COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20954-CIV -MORENO/SIMONTON

STEVEN M. BIRCOLL,

       Plaintiff,

vs.

MIAMI-DADE COUNTY,

       Defendant.

            /



## DEFENDANT MIAMI-DADE COUNTY'S
## SUPPLEMENT AL RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

    Pursuant to Fed. R. Civ. P. 36(a), Defendant Miami-Dade County files this supplemental

answer to Plaintiffs Request for Admissions:

4. On or about April 7, 2001, Plaintiff was a qualified individual with a disability.

**Response:** After receiving and reviewing medical documentation from Plaintiffs treating physicians, Defendant admits that Plaintiff had a hearing disability on April 7, 2001. Defendant, however, asserts that Plaintiff functioned and communicated effectively despite his hearing impairment on April 7, 2001.


5. On or about April 7, 2001, Plaintiff had a physical impairment which substantially limited his ability to hear.

**Response:** See Response number 4.

• 

Respectfully submitted,

MURRAY A. GREENBERG MIAMI-
DADE COUNTY ATTORNEY

By:

        Eric A. Hernandez
        Assistant County Attorney
        Florida Bar No. 340730
        Miami-Dade County Attorney's Office
        Stephen P. Clark Center
        **111** N.W. 1st Street, Suite 2810
        Miami, Florida 33128
        Phone: (305) 375-5151
        Fax: (305) 375-5611 Email:
        eah@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this 17th day of November, 2005, to: Jay M. Levy, Esq., 9130 S. Dade1and Blvd., Suite 1510, Two Datran Tower, Miami, Florida 33156.

Assistant County Attorney